## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| RJ KAGAN CONSULTING, LLC, | : | Case No. 1:21-cv-78 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| AMARANTUS BIOSCIENCE HOLDINGS, LLC, *et al.*, | : | |
| Defendants. | : | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

This matter is before the Court on Plaintiff's Motions for Default Judgment (Docs. 9, 12, & 14), Plaintiff's Proposed Order Granting Default Judgment (Doc. 13), and Plaintiff's Motion for Hearing on Default Judgment (Doc. 15). After Defendants failed to timely respond to the Complaint (Doc. 1) or appear in this matter, Plaintiff applied for an entry of default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 10.) The Clerk properly entered default against Defendants on April 22, 2022. (Doc. 11.) Plaintiff thereafter moved for default judgment against both Defendants pursuant to Federal Rule of Civil Procedure 55(b). (Doc. 14.) Defendants failed to timely respond as required by Local Rule 7.2(a)(2). *See* S. D. Ohio Civ. R. 7.2(a)(2). Thus, this matter is ripe for review.

For the reasons stated below, Plaintiff's Motion for Default Judgment (Doc. 14) is **GRANTED IN PART and DENIED IN PART**. Additionally, Plaintiff's Motions for

Default Judgment (Docs. 9 & 12) and Proposed Order Granting Default Judgment (Doc. 13) are **DENIED AS MOOT**.[1] And finally, Plaintiff's Motion for Hearing on Default Judgment (Doc. 15) is **DENIED**.

## FACTS

Plaintiff RJ Kagan Consulting, LLC is an Ohio for-profit consulting business. (Compl., Doc. 1, ¶¶ 1, 6.) Dr. Richard Kagan, a burn treatment specialist, consults on the treatment of burn patients on behalf of Plaintiff. (*Id.* at ¶ 6.) From 2018 to 2019, Plaintiff contracted with Defendant Amarantus Bioscience Holdings, Inc. ("Amarantus") for Dr. Kagan's services. (*Id.* at ¶¶ 2, 9, 12.) Defendant Gerald E. Commissiong is the President and CEO of Amarantus and conducted all communications and negotiations with Plaintiff on behalf of Amarantus. (*Id.* at ¶¶ 3, 8.) Amarantus has its principal place of business in San Francisco, California; however, Commissiong's office is located in New York, New York. (*Id.* at ¶¶ 2-3.)

The parties entered into three separate Consulting Agreements over the course of their business relationship. (Compl., Doc. 1, ¶ 9.) On April 17, 2018, the parties signed the First Consulting Agreement, which required Amarantus to pay Plaintiff $45,000 for Dr. Kagan's services. (*Id.* at ¶¶ 17, 18.) Then, on January 23, 2019, the parties signed the Second Consulting Agreement, again agreeing that Amarantus would pay Plaintiff

---

[1] Plaintiff's Motion for Default Judgment (Doc. 9) was filed prior to Plaintiff's application to the Clerk for default, in contravention of Federal Rule of Civil Procedure 55(a). (*See* Plaintiff's First Application to Clerk for Entry of Default Against Amarantus Bioscience and Gerald Commissiong, Doc. 11.) Plaintiff's Motion for Default (Doc. 14) is a consolidation of Plaintiff's Motion for Default (Doc. 12) and Plaintiff's Proposed Order Granting Default Judgment (Doc. 13). Thus, the motions are moot with the adjudication of Plaintiff's Motion for Default Judgment (Doc. 14).

2

$30,000 for Dr. Kagan's services. (*Id.* at ¶¶ 19, 20.) Finally, the parties signed the Third Consulting Agreement on October 21, 2019, which required Amarantus to pay Plaintiff $45,000 for Dr. Kagan's services. (*Id.* at ¶¶ 21, 22.) In total, Amarantus owed Plaintiff $120,000 pursuant to the Consulting Agreements. (*Id.* at ¶¶ 17-22.)

Dr. Kagan allegedly provided all services in accordance with the terms of the Consulting Agreements. (Compl., Doc. 1, ¶¶ 12, 23.) Therefore, Plaintiff substantially performed under the Consulting Agreements. (*See id.*) Despite Plaintiff's performance, Amarantus has only made one $2,500 payment towards the total amount owed to Plaintiff. (*Id.* at ¶¶ 15, 16.) Plaintiff has made multiple attempts to contact Defendants concerning payment. (*Id.* at ¶ 24.) However, Defendants have failed to respond or otherwise compensate Plaintiff for its substantial performance. (*Id.*)

Plaintiff maintains that Defendants "made representations to [Plaintiff] that it would be justly compensated for its [c]onsulting services . . . knowing they were false" and "with the intention of obtaining [Plaintiff's] services." (Compl., Doc. 1, ¶¶ 56-57, 63.) Defendants allegedly made such misrepresentations knowing Plaintiff's "interest in providing the services" and knowing that Plaintiff "would rely on Defendant[s'] representations." (*Id.* at ¶ 58.) In turn, Plaintiff alleges to have "reasonably rel[ied] on Defendants' representations and provided the services to [Defendants,] believing Defendants would make payment." (*Id.* at ¶ 59.)

## LAW

Federal Rule of Civil Procedure 55 governs entries of default and default judgment. A plaintiff seeking entry of default against a defendant must first show, "by

3

affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default against the defendant. *Id.* Following such entry, the plaintiff must apply to the court for a default judgment, except in cases where the claim "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b).

Once default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint, except those related to damages. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995). Nevertheless, a court deciding whether to grant a motion for a default judgment must still satisfy itself that the facts in the complaint state a claim for relief against the defendant. *Kuhlman v. McDonnel*, No. 1:20-cv-510, 2022 U.S. Dist. LEXIS 23846, at *4 (S.D. Ohio Feb. 10, 2022) (citation omitted); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Wright & Miller Fed. Prac. & Proc. Civ. § 2685 (3d ed. 2013).

## ANALYSIS

Plaintiff moves for: (1) an entry of default judgment against Defendants on all claims asserted and (2) a finding that Plaintiff is entitled to damages, pre- and post-judgment interest, costs, and attorney's fees. (*See* Doc. 14.) The Court will take each issue

in turn.

## I. Claims against Defendants

Plaintiff brings forward two claims against Amarantus individually and two claims against both Amarantus and Commissiong. First, Plaintiff alleges that Amarantus breached the Consulting Agreements by failing to perform. (Compl., Doc. 1, ¶¶ 30-45.) Plaintiff additionally alleges that Amarantus was unjustly enriched when it received Dr. Kagan's services without providing payment. (*Id.* at ¶¶ 46-53.) Plaintiff then alleges that both Defendants engaged in "theft of services" and fraud by obtaining Dr. Kagan's services through false representations. (*Id.* at ¶¶ 54-62.) In its motion, Plaintiff requests that this Court enter default judgment against Defendants for all of the aforementioned claims. (Motion for Default, Doc. 14, Pg. ID 46-48.) Each claim is addressed herein.

### a. Breach of Contract

In Count I, Plaintiff brings a breach of contract claim against Amarantus. (Compl., Doc. 1, ¶¶ 30-45.) As an initial matter, Plaintiff has not attached the Consulting Agreements, nor does Plaintiff indicate whether the Consulting Agreements have choice of law provisions.

In a diversity action, a district court must apply the choice of law rules of the state in which it sits. *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992). Ohio choice of law rules mandate that the law of the state with the most significant relationship to the contract should govern disputes arising from it. *Nationwide Mut. Ins. Co. v. Ferrin*, 487 N.E.2d 568 (Ohio 1986). In determining the most significant relationship, Ohio has adopted the test set forth in the Restatement (Second) of Conflict of Laws § 188, which

5

includes consideration of: (1) the place of contracting; (2) the place of negotiating the contract; (3) the place of performance; (4) the location of the contract subject matter; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *N. River Ins. Co. v. Emplrs. Reinsurance Corp.*, 197 F. Supp. 2d 972, 979 (S.D. Ohio 2002) (citing *Watts*, 963 F.2d at 150).

Plaintiff alleges that it is organized under the laws of Ohio and has its principal place of business in Cincinnati, Ohio. (Compl., Doc. 1, ¶ 1.) In contrast, Amarantus has its principal place of business in San Francisco, California; while, Commissiong's office is located in New York, New York. (*Id.* at ¶ 2.) The Complaint does not identify how or where the Consulting Agreements were negotiated or signed. And, though the Consulting Agreements focused on the services performed by Dr. Kagan, (*Id.* at ¶ 6), the Complaint does not identify where Dr. Kagan resides or where he performed such services. Thus, due to the lack of information, it is unclear which state had the most significant relationship to the Consulting Agreements. As multiple states may be appropriate, this Court will apply Ohio law. *See Dodge Data & Analytics LLC v. iSqFt, Dodge Data & Analytics LLC*, 183 F. Supp. 3d 855, 872 (S.D. Ohio 2016) ("If [] either state would be appropriate, the court should apply the law of the forum state.").

To prove a breach of contract under Ohio law, a plaintiff must prove four elements: (1) that a contract existed; (2) the plaintiff performed; (3) the defendant breached; and (4) the plaintiff suffered damages as a result of the breach. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006). Plaintiff and Amarantus entered into three Consulting Agreements, dated April 17, 2018, January 23, 2019, and October 21, 2019. (Compl., Doc.

6

1, ¶¶ 9-22.) Plaintiff fully performed pursuant to the Consulting Agreements by providing Dr. Kagan's services to Amarantus. (*Id.* at ¶¶ 12, 33, 38, 42.) Amarantus, in contrast, allegedly failed to perform under the Consulting Agreements—only paying $2,500 of the total $120,000 owed to Plaintiff. (*Id.* at ¶¶ 15, 16.) As a result of Amarantus' breach, Plaintiff has suffered $117,500 in damages. (*Id.* at ¶ 45.)

Deeming these allegations as admitted, the Court finds that Plaintiff adequately stated a claim for relief of breach of contract against Amarantus. Thus, Plaintiff is entitled to an entry of default judgment on the breach of contract claim against Amarantus.

### b. Unjust Enrichment

In Count II, Plaintiff brings an unjust enrichment claim against Amarantus. However, "a party cannot recover on both a breach of contract theory and an unjust enrichment theory." *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 867 (S.D. Ohio 2020). The Court found above that Plaintiff is entitled to an entry of default judgment and, therefore, recovery under its breach of contract claim. In turn, Plaintiff is not entitled to default judgment or recovery on its unjust enrichment claim. The Court, therefore, denies Plaintiff's motion with respect to its unjust enrichment claim as it is a duplicative of Plaintiff's breach of contract claim.

### c. Theft of Services

Count III of the Complaint is brought under a "theft of services" theory of liability against Amarantus and Commissiong. (Compl., Doc. 1, ¶¶ 54-61.) Plaintiff does not identify a specific statute that recognizes "theft of services" as a cause of action. However, various Ohio courts have identified "theft of services" as a form of criminal conduct in

7

violation of Ohio Revised Code § 2913—Ohio's theft code. *See, e.g., Baldonado v. Tackett*, No. WD-07-028, 2007 Ohio App. LEXIS 6003, at *5 (Ohio Ct. App. Dec. 21, 2007), *see also* O.R.C. § 2913.01 (1974 Committee Comment to H 511) (Wherein the committee articulates that the 1974 update to the code brought "theft of services within the purview of the general theft section."). So, the Court will construe Plaintiff's "theft of services" claim as asserting a claim for criminal charges against Defendants in violation of Ohio Revised Code § 2913.[2]

Plaintiff's "theft of services" claim cannot proceed against Defendants. "A private individual may not file criminal charges against another person." *Parks v. Coffman*, No. 1:21-cv-639, 2022 U.S. Dist. LEXIS 135825, at *8 n.3 (S.D. Ohio July 29, 2022) (citations omitted). "Criminal proceedings are initiated by a properly authorized prosecutor who acts on behalf of the government and often in coordination with a law enforcement agency." *Id*. Thus, this Court cannot enter default judgment against Defendants for "theft of services" and denies Plaintiff's motion for default judgment on its "theft of services"

---

[2] The Court would note that Plaintiff references Ohio Revised Code §§ 2307.60 and 2307.61 within Count III to recover civil damages for such criminal allegations. (Compl., Doc. 1, ¶61.) While Ohio Revised Code §§ 2307.60 and 2307.61 may create a civil cause of action for damages resulting from a criminal act, *see Jacobson v. Kaforey*, 75 N.E.3d 203, 207 (Ohio 2016), Plaintiff has not brought Count III as a claim under such statutes. Rather, Count III is brought under the heading of "theft of services," which would lead the reasonable reader to construe Count III as a claim for "theft of services." *See Miller v. Food Concepts Int'l, LP*, No. 2:13-cv-0124, 2014 U.S. Dist. LEXIS 6544, at *1 (S.D. Ohio Jan. 17, 2014) (noting that a pleading must give fair notice to defendants of the claim asserted against them). Such a reading of Plaintiff's Complaint is further evidenced by Plaintiff's Motion for Default, wherein it requests the Court to enter default judgment against Defendants for "theft of services." (*See* Doc. 14.)

claim.

### d. Fraud

Finally, in Count IV, Plaintiff claims that both Defendants engaged in fraud. The elements of fraud under Ohio law are:

> (1) a representation or, when there is a duty to disclose, a concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance.

*Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998).

Pursuant to Federal Rule of Civil Procedure 9(b), a party "alleging fraud" must "state with particularity the circumstances constituting fraud." At a broad level, "Rule 9(b) requires the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quotations omitted). More specifically, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). Further, the plaintiff must describe "the fraudulent scheme" and "the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2001).

Plaintiff alleges that Defendants "made representations to [Plaintiff] that it would be justly compensated for its [c]onsulting services." (Compl., Doc. 1, ¶ 63.) "Defendants made those representations knowing they were false" and "with the intention of

9

obtaining [Plaintiff's] services." (*Id.* at ¶¶ 56-57.) Defendants allegedly made such misrepresentations knowing Plaintiff's "interest in providing the services" and knowing that Plaintiff "would rely on Defendant[s'] representations." (*Id.* at ¶ 58.) Plaintiff claims to have "reasonably rel[ied] on Defendants' representations and provided the services to [Defendants,] believing Defendants would make payment." (*Id.* at ¶ 59.) However, Defendants "have failed and refuse[d] to pay." (*Id.* at ¶ 60.) As a result of Defendants' alleged misrepresentations, Plaintiff suffered damages in excess of $100,000. (*Id.* at ¶ 62.)

Two omissions are fatal to Plaintiff's fraud claim pursuant to Rule 9(b). First, Plaintiff fails to identify the individual that made the misrepresentations, or what exactly the statements were that constituted such misrepresentations. Instead, Plaintiff alleges generally that Defendants made fraudulent representations—which does not meet the requirements of Rule 9(b). *See, e.g., United States ex rel. Bledsoe v. Cmty Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003).

Second, Plaintiff fails to sufficiently explain the resulting injury arising from the alleged fraud. As plead, Plaintiff's injuries in Count IV stem from Amarantus' failure to perform the contractual duties, not its reasonable reliance on Defendants' misrepresentation. *See New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 412 (6th Cir. 2022). Plaintiff alleges that it has experienced damages in excess of $100,000 resulting from Defendants' alleged fraud. (Compl., Doc. 1, ¶ 62.) The remaining amount allegedly owed to Plaintiff pursuant to the Consulting Agreements was $117,500. (*Id.* at ¶ 45.) Plaintiff does not explain what other, specific injury was caused by the alleged fraud. Rather, "these are just the contractual damages [Plaintiff] already alleged; a

10

contractual breach is one thing and fraud is another." *New London Tobacco Mkt., Inc.*, 44 F.4th at 412. Plaintiff, thus, fails to adequately describe the resulting injury from the alleged fraud as required by Rule 9(b).

Plaintiff's Complaint fails to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, the Court denies Plaintiff's motion with respect to its fraud claim.

### II. Damages, Pre- and Post-judgment Interest, Costs, and Attorney's Fees

Plaintiff additionally seeks an award of damages, pre- and post-judgment interest, costs, and attorney's fees related to this action. (Motion for Default, Doc. 14, Pg. ID 47-48.) "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Vesligaj v. Peterson*, 331 Fed. Appx. 351, 355 (6th Cir. 2009) (quotations omitted). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Id.* (quotations omitted). "Although the court may conduct an evidentiary hearing to determine damages, an evidentiary hearing is not a prerequisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained on the record before the court." *Joe Hand Promotions, Inc. v. RPM Management Co. LLC*, No. 2:11-cv-377, 2011 U.S. Dist. LEXIS 129260, at *1 (S.D. Ohio Nov. 7, 2011) (citation omitted).

At this time, the Court will refrain from determining whether Plaintiff is entitled to damages, pre- and post-judgment interest, costs, and attorney's fees. While Plaintiff has demonstrated that it is entitled to default judgment against Amarantus for Count I of

11

the Complaint, Plaintiff has not supplied the Court with any evidence to support its request for damages related to such claim. For example, Plaintiff has not included the Consulting Agreements in any of its filings. Moreover, Plaintiff has not provided any form of evidence or briefing to support its request for pre- and post- judgment interest, costs, or attorney's fees. Thus, Plaintiff is directed to file supplemental briefing to fully inform the Court on the matter. Following such submission, the Court will adjudicate the merits of Plaintiff's request.

## CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the following:

1. Plaintiff's Motions for Default Judgment (Docs. 9 & 12) and Proposed Order Granting Default Judgment (Doc. 13) are **DENIED AS MOOT**;

2. Plaintiff's Motion for Hearing on Default Judgment (Doc. 15) is **DENIED**;

3. Plaintiff's Motion for Default Judgment (Doc. 14) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's motion for default judgment is **GRANTED** as to Defendant's liability for breach of contract. Plaintiff's motion for default judgment is **DENIED** as to Defendant's liability for (1) unjust enrichment, (2) "theft of services," and (3) fraud;

4. Default judgment is **ENTERED** against Defendant Amarantus for Plaintiff's breach of contract claim; and

5. Within thirty (30) days of the date of this Order, Plaintiff **SHALL FILE** a supplemental memorandum supporting its request for damages, pre- and post-judgment interest, costs, and attorney's fees.

**IT IS SO ORDERED.**

                                      UNITED STATES DISTRICT COURT
                                      SOUTHERN DISTRICT OF OHIO

                                By: _____
                                      JUDGE MATTHEW W. McFARLAND

13